**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 04, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 19-13044-HH
Case Style: H. James v. City of Montgomery
District Court Docket No: 2:17-cv-00528-ALB-WC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Christopher Bergquist, HH at 404-335-6169.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13044
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00528-ALB-WC

H. RENEE JAMES,

                                                                         Plaintiff–Appellant,

versus

CITY OF MONTGOMERY,

                                                                         Defendant–Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(August 4, 2020)

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Hortensia James, a former officer with the Montgomery, Alabama, Police Department, brought the instant suit against the Department for workplace discrimination and retaliation. James, an African-American female, raised claims of race and sex discrimination and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3. The district court granted the City of Montgomery summary judgment on James's claims. James appeals from this determination—and argues that the district court improperly disregarded portions of her declaration. After carefully reviewing the record, we affirm.

## I. BACKGROUND

A.   *James's Allegations*

While we write only for the benefit of the parties, we nonetheless set out the facts insofar as they are relevant for understanding our opinion. Hortensia James, an African-American female, worked as a police officer in the Robbery Bureau of the Department. While working for the Department, she was repeatedly disciplined for misconduct and was denied an opportunity to transfer to the Homicide Bureau. She alleges that the punishments she received, along with the denial of her transfer request, occurred because the Department was discriminating against her on the basis of her sex and race.

We summarize James's allegations as follows.  In 2013, she received a 19-day suspension after stopping a school bus to detain a minor who had hit her daughter, while a white male officer in the Department received only a 3-day suspension for using excessive force against a suspect and lying about it during the subsequent investigation.  Her requests to be transferred to the Homicide Bureau from the Robbery Bureau were ignored, but a less qualified white male officer had received training so that he could be moved to the Homicide Bureau once his training was complaint.  She complained to Deputy Chief Ron Cook about race and sex discrimination in January 2015.  Shortly thereafter, Sergeant Bruce Thornell helped coach a citizen into filing a complaint against James, leading to James confronting Thornell.  At some point, Sergeant Hudson, James's superior, issued a written reprimand against James for not providing a doctor's note for missing work, a requirement not enforced against white detectives who called out sick.  The investigation of the citizen complaint and the confrontation with Sergeant Thornell resulted in James's suspension in 2015.  A white male detective, Corporal Schnupp, had similar confrontations with Sergeant Thornell without being disciplined.  Another white man, Detective Geier, received only a 3-day suspension after cursing his supervisor.

James was ultimately terminated from her position after sending an email to the Department's Chief of Police, Chief of Staff, and Chief of Operations that

compared the Department to a small "Middle Eastern country" that was run like a "dictatorship." After the Department investigated the incident, James's superior recommended that she be terminated. Then-Mayor Todd Strange approved James's termination on November 21, 2017.

    B.    *The Instant Lawsuit*

Prior to her termination, James filed the instant lawsuit against the City on August 4, 2017. She amended her complaint following her termination in February 2018. In relevant part, James raised retaliation and race and sex discrimination claims against the City,[1] based on the aforementioned allegations. The City, in turn, moved for summary judgment. James offered her declaration as her sole evidentiary support for the allegations in her complaint and in opposition to the City's motion for summary judgment.

The district court granted the City's motion for summary judgment. As a preliminary matter, it found that James had failed to create a factual record on which it could evaluate her claims, and that her declaration was full of inconsistencies, speculation, ambiguities, and statements made without personal knowledge. Accordingly, the district court disregarded "any improper statements" in the declaration and considered the rest of it as needed. Ultimately, the district

---

[1] James dismissed with prejudice her claims against all other parties. She also dismissed with prejudice her harassment claims against the City.

4

court determined that James had not made out a *prima facie* case for either discrimination or retaliation, and that James's discrimination claims similarly failed under a convincing-mosaic theory. James timely appealed.

## II. DISCUSSION

We review *de novo* a district court's grant of summary judgment, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018). Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Moreover, a non-moving party cannot survive summary judgment by presenting "a mere scintilla of evidence" and must instead present evidence from which a reasonable jury could find in its favor. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation marks omitted).

The party moving for summary judgment bears the initial burden to identify any portions of the pleadings, depositions, answers to interrogatories, and affidavits demonstrating the absence of a genuine issue of material fact. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). The burden then shifts to the nonmoving party to rebut that showing by producing relevant and admissible evidence beyond the pleadings. *Id.* The nonmoving party cannot

5

satisfy its burden with evidence that is "merely colorable, or is not significantly probative of a disputed fact." *Id.* (quotation marks omitted).

James's appeal focuses on the alleged impropriety of the district court's grant of summary judgment to the City on her discrimination and retaliation claims. We address each of these arguments in turn, but begin first with James's argument that the district court improperly disregarded parts of her declaration.

A. *James's Declaration*

A non-conclusory affidavit which complies with Federal Rule of Civil Procedure 56, even if self-serving and uncorroborated, can create a genuine dispute concerning an issue of material fact. *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018). Affidavits submitted in support of a summary judgment motion must be based on personal knowledge, show that the affiant or declarant is competent to testify, and set out facts that would be admissible under the Federal Rules of Evidence. Fed. R. Civ. P. 56(c)(4). Conclusory allegations have no probative value unless supported by specific facts. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

Here, the district court stated that it disregarded as conclusory her allegation about white detectives not requiring doctor's notes and that four white men had transferred into the Homicide Bureau without letters of transfer; it disregarded her allegation that a less qualified white man received additional training to join the

Homicide Bureau as speculation not supported by the evidence.  James argues that the district court improperly disregarded these statements because they were neither conclusory nor speculative.

We conclude that the district court did not err in disregarding these statements.  Those statements were conclusory allegations that had no probative effect because they were not based on specific facts.  *See Leigh*, 212 F.3d at 1217.  She alleged that her 2015 written reprimand was retaliatory without identifying times she had previously called in sick without being reprimanded or the white officers who called in sick far more often or the circumstances under which they called in sick.  Her allegations regarding the Homicide Bureau were seemingly contradictory, as she simultaneously alleged that she was provided no explanation for her transfer being denied and that she was told that her transfer was denied because of a letter-of-transfer policy.  James provided no specific facts regarding her denial of transfer, such as how many times she requested transfer, when she requested transfer, and who made the decision to deny her request.  Her allegations that four white men had transferred to the Homicide Bureau without letters of transfer or that a lesser qualified white male detective was receiving additional training so he could join the Homicide Bureau were conclusory and not supported by any evidence, and indeed, were in tension with her testimony that no one transferred to the Homicide Bureau while she was working at the Robbery Bureau.

7

On balance, we conclude that these statements were conclusory in nature and therefore had no probative value; the district court properly disregarded them.

    B.    *Race and Sex Discrimination Claims*

Title VII prohibits employers from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment "because of" her race or sex. 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits "intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); 42 U.S.C. § 1981. The elements of race discrimination claims under § 1981 and Title VII are the same and therefore need not be analyzed separately. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

Under the *McDonnell-Douglas*[2] burden-shifting framework, an employee may establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) the employer treated a similarly situated employee outside of the protected class more favorably. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). When an employee alleges that she was denied a different job in the same organization, she

---

[2] *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973).

8

must establish that a reasonable person would prefer being transferred to the new position for that denial to amount to an adverse employment action. *Jefferson*, 891 F.3d at 921. She may do so through evidence of improved wages, benefits, or rank, as well as other serious and material changes in the terms, conditions, and privileges of employment, such as the prestige of the position. *Id.*

To the extent a plaintiff seeks to show disparate treatment of comparators of a different race or sex, those individuals must be similarly situated. *See Silvera v. Orange Cty. School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). For comparators to be similarly situated, they do not have to be "nearly identical," but rather, "similarly situated in all material respects." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). The meaningful comparator analysis must be conducted at the *prima facia* stage of *McDonnell-Douglas*'s burden-shifting framework and should not be moved to the pretext stage. *Id.* Ordinarily, a similarly situated comparator will have engaged in the same basic misconduct as the plaintiff, been under the same supervisor, and share the plaintiff's disciplinary history. *See id.* at 1228.

Notwithstanding a plaintiff's failure to establish a *prima facie* case of discrimination under *McDonnell-Douglas*, she will always survive summary judgment if she presents a convincing mosaic of circumstantial evidence that creates a triable issue about the employer's discriminatory intent. *Smith*, 644 F.3d

9

at 1328. A plaintiff may establish a "convincing mosaic" "by evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*Lewis II*) (quotation marks omitted).

James argues that she was subjected to race and sex-based discrimination for (1) the denial of her transfer to the Homicide Bureau; and (2) the two instances of discipline for alleged misconduct. With respect to the first allegation, James's specific argument is that the reason given by the City for denying her transfer—that she was required to have a letter of transfer—was pretextual because that policy did not apply to four white, male officers who transferred. James's argument is much the same with respect to the second allegation. Here, she argues that Detective Hogan and Corporal Schnupp received lesser discipline for similar actions, and that the difference can be explained because of discrimination on the City's part.

We conclude that the district court correctly granted summary judgment for the City as to James's discrimination claims—both because James has failed to make out a *prima facie* case for discrimination and because her claims fail under a convincing-mosaic theory. James has conceded that her discrimination claims

were predicated on three events—a denial of an internal transfer and two disciplinary actions. Beginning with the *prima facie* case, James's allegations of discriminatory conduct are insufficient. With respect to her allegation regarding the denied transfer, the district court concluded that James failed to demonstrate that the transfer to the Homicide Bureau was an adverse employment action, but that even if it was, James had failed to identify a valid comparator. Instead, the allegation that she made—that other detectives transferred into the Bureau without meeting the ostensible requirement of a letter of transfer—was conclusory and made without direct personal knowledge. We cannot conclude that James's vague allegations of other, successful transfers is sufficient to create a valid comparator. Moreover, James's argument regarding pretext—that because other detectives transferred without the letter, her denial was pretextual—necessarily depends upon the existence of a valid comparator.

James's second set of allegations fails for much the same reason. She failed to produce evidence showing that the alleged comparators, Hogan and Schnupp, were similarly situated to her in all material respects. With respect to her 2013 suspension, the incidents that Hogan and James were disciplined for—Hogan for using excessive force on a subject and James for stopping a school bus while off-duty (and out of her jurisdiction) to arrest a student for fighting with her daughter—were not materially similar. Moreover, she did not produce evidence

11

showing that she and Hogan had a similar disciplinary history or were disciplined by the same supervisor at the time that they were punished. *See Lewis*, 918 F.3d at 1228. As to her 2015 written reprimand issued by Sergeant Hudson, James identified no individual as a comparator and instead relied on her conclusory allegation that white detectives were not required to provide doctor's notes when they called out sick. Her argument that Schnupp was a valid comparator for how Thornell treated her does not relate to any of the three instances of alleged discrimination. In any event, James did not produce evidence showing that she and Schnupp shared the same disciplinary history or were being disciplined for the same conduct when Sergeant Thornell interacted with them. *See id.* Accordingly, James failed to establish a prima facie case of race or sex discrimination under the *McDonnell-Douglas* framework.

We also conclude that James also failed to produce a convincing mosaic of circumstantial evidence that created a triable issue about the City's discriminatory intent. James's declaration—the only evidence on which she relied in opposing summary judgment—did not allow for a reasonable inference of the City's discriminatory intent when considered with the rest of the undisputed facts. Accordingly, we affirm the district court's grant of summary judgment for the City on James's discrimination claims and now address her retaliation claims.

    C.    *Retaliation Claims*

Title VII protects an employee against retaliation by their employer because the employee has (a) opposed any practice prohibited by Title VII or (b) participated in any manner in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). While 42 U.S.C. § 1981 does not expressly protect individuals from retaliation, it has been interpreted as doing so. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451-52 (2008); *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998). The elements of retaliation claims under § 1981 and Title VII claims are the same and therefore need not be analyzed separately. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

A retaliation claim based on circumstantial evidence is analyzed under the *McDonnell-Douglas* burden-shifting framework. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993). A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal relation between the two events. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

A causal link between protected expression and the materially adverse action arises where the defendant was aware of the protected activity and took materially adverse action as a result. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2007). To establish causation, a plaintiff needs to show that the decisionmaker actually knew about her protected expression. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048 (11th Cir. 2020). Under a "cat's paw" theory of liability, the discriminatory animus of a non-decisionmaker can be imputed to a neutral decisionmaker that acted as a mere conduit. *Crawford v. Carroll*, 529 F.3d 961, 979 n.21 (11th Cir. 2008).

Causation must be established according to traditional principles of but-for causation, which requires "proof that the desire to retaliate was the but-for cause of the challenged . . . action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013). Accordingly, a plaintiff is required to present at summary judgment enough evidence from which a reasonable juror could find her protected activity was a but-for cause of the adverse employment action. *See Knox v. Roper Pump Co.*, 957 F.3d 1237, 1245 (11th Cir. 2020). Causation may be inferred by close temporal proximity between the protected activity and the adverse employment action. *Thomas,* 506 F.3d at 1364. A three- to four-month period between the protected activity and adverse employment action is not sufficient. *Id.*

14

Here, we conclude that the district court correctly granted summary judgment for the City on James's retaliation claims—predicated on three disciplinary actions, including her employment termination—because she did not produce evidence creating a genuine issue of material fact as to whether there was a causal connection between her statutorily protected activity and adverse employment actions.  James did not produce evidence showing that the decisionmakers of the first two disciplinary actions knew of her protected activity.  While it is undisputed that the final decisionmaker behind James's employment termination (the Mayor) knew of her protected activity (the filing of the instant lawsuit), James did not produce evidence that would allow a reasonable juror to conclude that her protected activity, which occurred almost four months before the termination, was the but-for cause of it.  Her termination was the culmination of the Department's progressive-discipline policy.  She was already at the last step before termination when she sent an email to the Chief of Police (and others in higher management) asserting that the Department was run like a Middle Eastern dictatorship.  An official investigation ensued.  It was determined that this Category B major violation (insubordination) had been preceded by two previous Category B major violations, a circumstance which had resulted in termination in the past.  Based on the recommendation of the investigation, the Mayor terminated James's employment.

Assuming, *arguendo*, but not deciding, that retaliation claims can survive summary judgment under a convincing-mosaic theory, her declaration—the only evidence on which she relied—did not create a convincing mosaic of circumstantial evidence that created a triable issue about the City's retaliatory intent. Accordingly, we affirm the district court's grant of summary judgment for the City on James's retaliation claims.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted the City of Montgomery summary judgment on James's discrimination and retaliation claims. The district court's order is

**AFFIRMED.**